IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BAILEY LUMBER & SUPPLY CO. and 84 LUMBER COMPANY | § § § | PLAINTIFFS |
| v. | § § | CAUSE NO. 1:08CV1394 LG-JMR |
| GEORGIA-PACIFIC CORP.; BLUELINX CORPORATION; WEYERHAEUSER CO. and LOUISIANA-PACIFIC CORP. | § § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS OF BLUELINX CORPORATION**

THIS CAUSE comes before the Court for consideration of the Motion to Dismiss [45] filed by Defendant BlueLinx Corporation. The Plaintiffs have responded to the Motion, and BlueLinx has replied. After due consideration of the parties' arguments and pleadings, and the relevant law, the Court concludes that the Plaintiffs have not sufficiently stated a cause of action against BlueLinx for violation of Section 1 of the Sherman Antitrust Act.

DISCUSSION

The Plaintiffs are purchasers of plywood and oriented strand board, referred to as "structural panels." They allege that the Defendants have engaged in a conspiracy to fix prices for these materials, in violation of Section 1of the Sherman Act.

The First Amended Complaint is lengthy, and describes a conspiracy beginning in 2001 between Georgia-Pacific Corporation, Weyerhouser Company, Louisiana-Pacific Corporation, and others to restrict the supply of structural panels. These three Defendants are all structural panel manufacturers. Defendant BlueLinx is a distributor of building products, alleged to have been formed in May 2004, when it was "spun off" from Georgia-Pacific.

Plaintiffs characterize a transaction between Georgia-Pacific and Louisiana Pacific

resulting in a 2% reduction in North American structural panel capacity as "perhaps the single most important overt act of the conspiracy." Am. Compl. ¶ 56. There are numerous allegations of the manufacturing defendants closing or idling their structural panel plants in a coordinated manner, in order to reduce the supply of structural panels in the marketplace and raise prices. There are fewer allegations regarding a separate part of the conspiracy - to coordinate the price for structural panels - and very little information about the period of time after BlueLinx was created in May 2004. For example,

> In 2002, the conspirators took action in at least four ways to implement the "managed trade" objective. They cancelled or postponed planned new production facilities. Most importantly, they shut down some existing production facilities. They curtailed production at existing facilities through extended downtimes. They purchased products from each other, instead of manufacturing such products themselves, which they could have done at lower cost. Such purchases from competitors, whether through written contracts with prices pegged to Random Lengths[1] prices or through open market purchases, helped to maintain the status quo of market shares.
>
> . . .
>
> At a minimum, such curtailments signaled a willingness to participate in the second prong of the conspiracy, namely the almost daily sharing of information regarding open market pricing, order files, curtailments and related information. Georgia-Pacific, through its distribution division, was the ringleader of this portion of the conspiracy. After being spun off in May 2004, BlueLinx continued to participate in this portion of the conspiracy.
>
> . . .
>
> Indeed, the Random Lengths reported prices told Defendants all they needed to know about their competitors' prices, even in the absence of direct communications about price, which Plaintiffs believe occurred on nearly a daily basis. The Random Lengths twice-weekly reported prices, which allow for very

---

[1] "Random Lengths" refers to Random Lengths Publications, Inc., which publishes online reports twice weekly on price trends and industry news for OSB and plywood. Many purchase contracts are linked to the reported Random Lengths price. Am. Compl. ¶ 35.

> little lag time, allowed Defendants to monitor their competitors' prices and detect potential cheating on the conspiracy.
>
> . . .
>
> The conspiracy continued to operate after the year 2004 and into the years 2005 and 2006, with members of the conspiracy either continuing to communicate regarding the agreements to fix, maintain, and stabilize prices at anti-competitive levels or to individually maintain prices at such anti-competitive levels such that the momentum of the conspiracy continued to inflict damage upon the Plaintiffs.

Am. Compl. ¶¶ 74, 81, 91, 113.

BlueLinx argues that it would be irrational for it to conspire to raise prices of commodities it purchases for resale, and therefore the allegations against it are insufficient to state a claim when analyzed under the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the U.S. Supreme Court examined whether allegations of a conspiracy were sufficient to survive a motion to dismiss when there was no factual context suggesting agreement, as distinct from identical, independent action of the defendants that was unfavorable to competition. *Id*. at 548-49. The court held that "stating [a Section 1 claim] requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556. The allegations must "plausibly" suggest, not merely be consistent with, agreement. *Id*. at 557.[2]

---

[2] BlueLinx cites to *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) for its assertion that the implausibility of it conspiring to raise the prices of commodities it purchases requires the Plaintiffs to "come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id*. The *Matsushita* case analyzed whether a genuine issue for trial existed under Rule 56, finding an antitrust defendant's economic motive to be "highly relevant" to the resolution of the question *Id*. at 596. The case did not address sufficiency of the pleadings under Rule 12. This was recognized by the Supreme Court when it stated in *Twombly*, "at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently." The Court is not aware of a case in which the Fifth Circuit has applied the *Matsushita* standard to

Plaintiffs assert that their allegations describe a "very basic conspiracy to eliminate capacity and reduce supply, share production and inventory related information and raise prices." Ct. R. 61 p. 4. They argue that their allegations against BlueLinx are set out most clearly in this paragraph:

> Such purchases from other structural panels manufacturers gave Georgia-Pacific the means, motive and opportunity to contact the other manufacturers on an almost daily basis, both to purchase products and to learn what other manufacturers were charging in the market. On those occasions when no purchases were being made, representatives of Georgia-Pacific regularly inquired about such subjects as open market pricing, length of order files, planned curtailments and similar business information. The other manufacturers freely provided such information, which the Georgia-Pacific buying group then passed on to the Georgia-Pacific distribution division sales group. The purpose of this information exchange was to fix prices in the market. The information exchange violated the antitrust laws, industry guidelines (such as those published by the American Forest & Paper Association and the National Hardwood Lumber Association), and Georgia-Pacific's internal antitrust compliance policies. When such calls were placed to the other Defendants and no purchasing took place, the other Defendants would have known and agreed that the purpose of the information exchange was to facilitate price-fixing. This conduct of the Georgia-Pacific distribution division was continued by BlueLinx after the distribution division was spun off in May 2004. BlueLinx thus became a member of the conspiracy from its inception as an operating corporation.

Am. Compl. ¶ 85.

In order to state a claim for a violation of Section 1 of the Sherman Act, a plaintiff must allege (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an "unreasonable" restraint of trade. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1158 (5th Cir. 1992) (citing *White & White v. Am. Hosp. Supply Corp.,* 723 F.2d 495, 504 (6th Cir.1983)). The plaintiff must allege that the defendants' conspiracy produced some

---

Rule 12 analysis. As this motion has been made under Rule 12, the Court finds BlueLinx's implausibility argument, to the extent it is supported by *Matsushita*, inapplicable.

anti-competitive effect in the relevant market. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994).

Here, Plaintiffs do not allege or argue that BlueLinx was part of the agreement to reduce capacity in the structural panel market, only that it continued in the price information sharing aspect of the conspiracy. However, Plaintiffs also allege that the price information provided by the Random Lengths publication "told Defendants all they needed to know about their competitors' prices, even in the absence of direct communications about price." In the Court's opinion, these allegations against BlueLinx, taken as true, do not "plausibly" suggest agreement unfavorable to competition. If the price information was legitimately published twice weekly for all to see, it is difficult to discern an illegal conspiracy revolving around privately sharing that same information. Further, the Plaintiffs' have alleged no anti-competitive effect resulting from the conspiracy to privately share price information as opposed to any effect from the sharing of price information in a twice-weekly publication. Finally, the explanation that BlueLinx was interested in structural panel price information because its business was to purchase structural panels for resale is more plausible than the Plaintiffs' assertion that BlueLinx was participating in a price-fixing conspiracy to keep prices high. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Accordingly, the Court finds Plaintiffs' allegations insufficient to state a claim against BlueLinx for violation of Section 1 of the Sherman Antitrust Act.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [45] filed by Defendant BlueLinx Corporation is **GRANTED**. Plaintiffs' claims against BlueLinx

Corporation are **DISMISSED WITHOUT PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(6).

**SO ORDERED AND ADJUDGED** this the 6th day of August, 2009.

        s/ *Louis Guirola, Jr.*
        LOUIS GUIROLA, JR.
        UNITED STATES DISTRICT JUDGE