# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BAILEY LUMBER & SUPPLY CO.** | § | |
| **and 84 LUMBER COMPANY** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **CAUSE NO. 1:08CV1394 LG-JMR** |
| | § | |
| **GEORGIA-PACIFIC CORP.; BLUELINX** | § | |
| **CORPORATION; WEYERHAEUSER CO.** | § | |
| **and LOUISIANA-PACIFIC CORP.** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION TO DISMISS OF BLUELINX CORPORATION

THIS CAUSE comes before the Court for consideration of the Motion to Dismiss [99] filed by Defendant BlueLinx Corporation. The Plaintiffs have responded to the Motion, and BlueLinx has replied. After due consideration of the parties' arguments and pleadings, and the relevant law, the Court concludes that the Plaintiffs have not sufficiently stated a cause of action against BlueLinx for violation of Section 1 of the Sherman Antitrust Act. Accordingly, their claims against BlueLinx will be dismissed without prejudice.

### DISCUSSION

The Plaintiffs are purchasers of plywood and oriented strand board ("OSB"), referred to together as "structural panels." They allege that the Defendants have engaged in a conspiracy to fix prices for these materials, in violation of Section 1 of the Sherman Act. The Plaintiffs opted out of a class-action suit filed in Pennsylvania alleging an OSB price-fixing conspiracy.

After this Court dismissed Plaintiffs' allegations against Defendant BlueLinx in the First Amended Complaint, *see* Memorandum Opinion and Order Granting Motion to Dismiss, August 6, 2009 (Ct. R. 85), they filed a Second Amended Complaint. The allegations against BlueLinx in this Second Amended Complaint are the subject of its Motion to Dismiss.

In order to state a claim for a violation of Section 1 of the Sherman Act, a plaintiff must allege (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an "unreasonable" restraint of trade. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1158 (5th Cir. 1992) (citing *White & White v. Am. Hosp. Supply Corp.,* 723 F.2d 495, 504 (6th Cir.1983)). The plaintiff must allege that the defendants' conspiracy produced some anti-competitive effect in the relevant market. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994).

Plaintiffs' Second Amended Complaint is almost twice the length of their First Amended Complaint and describes a conspiracy begun in 2001 between Georgia-Pacific Corporation, Weyerhaeuser Company, Louisiana-Pacific Corporation, and others to increase the prices of structural panels. These three Defendants are all structural panel manufacturers. Of the three, only Weyerhaeuser has a distribution division. Louisiana-Pacific sold its distribution operation in 2002. Georgia-Pacific sold its distribution division in May 2004, which became BlueLinx. Most of the Georgia-Pacific distribution division employees remained as employees of BlueLinx. BlueLinx buys more than 10,000 building products from more than 750 suppliers, maintains inventories of those products in warehouses, and resells and ships products to approximately 11,500 customers. 2d Am. Compl. ¶ 6.

The Plaintiffs allege two separate mechanisms employed by the Defendants to raise prices. First is the manipulation of supply. There are numerous allegations of the manufacturing defendants closing or idling their structural panel plants in a coordinated manner, in order to reduce the supply of structural panels in the marketplace and raise prices. As a distributor, BlueLinx had no part in this aspect of the alleged conspiracy.

The second mechanism was enforcement of pricing discipline through price information sharing. The Court has carefully reviewed the Second Amended Complaint for allegations regarding this aspect of the alleged conspiracy under the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In *Twombly*, the U.S. Supreme Court held that "stating [a Section 1 claim] requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556. The allegations must "plausibly" suggest, not merely be consistent with, agreement. *Id*. at 557. Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). In short, when the well-pleaded complaint does not permit the court to infer more than the mere possibility of misconduct, the pleader is not entitled to relief. *Id*. at 1949.

The allegations regarding BlueLinx are set out in paragraphs 112 through 123 of the Second Amended Complaint. In addition, there is a relevant price chart at paragraph 155. Plaintiffs assert that BlueLinx employees participated in the price-fixing conspiracy after May 2004 just as they had as employees of Georgia-Pacific. 2d Am. Compl. ¶ 123. Without factual allegations supporting this statement, it is simply a legal conclusion of conspiracy and not entitled to the assumption of truth. *Twombly*, 550 U.S. at 555. Plaintiffs describe BlueLinx's costs and profits under various structural panel purchase and sales scenarios, alleging thereby that BlueLinx had an incentive to raise prices. Plaintiffs also allege that BlueLinx employees made daily calls to salespersons at other companies to inquire about prices and other market intelligence. However, there is no allegation that BlueLinx did something improper with this

information, such as sharing it with others.  Although the Supreme Court has recognized the

danger of collusion posed by the exchange of pricing information, *Great Atlantic & Pacific Tea*

*Co., Inc. v. F.T.C.,* 440 U.S. 69, 80 (1979); *see also United States v. U.S. Gypsum Co.,* 438 U.S.

422, 457 (1978), BlueLinx's price information gathering "is not itself a *per se* violation of the

Sherman Act." *U.S. v. Citizens and So. Nat. Bank*, 422 U.S. 86, 113  (1975).  It seems obvious

that a distribution operation would have a legitimate business interest in knowing what it could

buy and sell its products for on a continuous basis.  The Plaintiffs' allegations concerning

BlueLinx's profits on structural panels depending on the prices at which it was able to buy and

sell simply illustrates the point.  Inquiring into a supplier's planned shut downs or other activities

would seem to be a prudent business practice, allowing a distribution operation to more

effectively plan for its future purchases.  It is the nature of BlueLinx's business that indicates that

its incentives are not aligned with the manufacturing defendants.  Unlike the manufacturers,

BlueLinx had to purchase all of its structural panels before it could sell any.  An increased price

from the manufacturer would require BlueLinx to raise the price at which it sold structural panels

if it wished to maintain profitability.  This is true regardless of the magnitude of any discount

from the published industry price BlueLinx received from the manufacturers by virtue of its

contracts.  Further, unlike the manufacturers, BlueLinx had no mill-related information of its

own to share.  If the co-conspirators made daily calls to BlueLinx (and it does not appear that the

Plaintiffs have made that allegation[1]), BlueLinx could only have informed the others of the prices

---

[1]  The allegations regarding Weyerhaeuser and Georgia-Pacific are that the distribution divisions had daily discussions with "mills" or "manufacturers."  2d Am. Compl. ¶ 102, 109. There are no allegations that Louisiana-Pacific personnel ever contacted BlueLinx.  See *id*. at ¶111.

it was charging its customers, which Plaintiffs allege were completely separate from the

Manufacturing Defendants' customers.

Plaintiffs do allege that BlueLinx acted in a way that displeased Louisiana-Pacific when

BlueLinx lowered its prices on OSB in late July 2005. 2d Am. Compl. ¶ 120. Louisiana-Pacific

allegedly retaliated by refusing to sell OSB to BlueLinx. *Id.* A salesperson of another

manufacturer, Norbord, allegedly discussed the "too low" pricing with a BlueLinx purchasing

employee, who denied the accusation that BlueLinx was shorting the market with its low prices.

The BlueLinx purchasing employee stated that BlueLinx did not want to see prices decline either.

*Id.* at ¶ 121. The Norbord salesperson "agreed with [the BlueLinx employee] to 'more frequent

conversations when issues such as this arise.'" *Id.* Plaintiffs allege that after this discussion,

BlueLinx's prices rose to the level desired by Norbord and Louisiana-Pacific. *Id*. at ¶ 122.

BlueLinx argues that this set of allegations is insufficient to state an antitrust claim

because it describes a conversation that took place in July 2005, more than a year after BlueLinx

came into being. This makes the inference of conspiracy less plausible. *In re LTL Shipping

Servs. Antitrust Litig.*, 2009 WL 323219, at *17 (N.D. Ga. Jan. 28, 2009) (claim insufficient

where the only factual data presented was four years into the alleged conspiracy period). Further,

prices did rise after this conversation in July 2005, but BlueLinx points out that according to the

Plaintiffs' allegations, it took approximately two months, and the occurrence of Hurricane

Katrina, for prices to rise beyond the July 2005 price. 2d Am. Compl. ¶155. BlueLinx also

describes the communication as "industry chatter" between employees of their respective

companies, which has been insufficient to show an antitrust violation in other cases. *See In re

Baby Food Antitrust Litig.*, 166 F.3d 125 (3d Cir. 1999); *Krehl v. Baskin-Robbins Ice Cream Co.*,

664 F.2d 1348 (9th Cir. 1982). Neither of the cases cited by BlueLinx involved a motion to dismiss, and therefore the Court gives less weight to this argument. In the Court's view, the allegations involving late July 2005, establish that BlueLinx was subjected to pressure to raise prices from some of its structural panel suppliers, but do not allow the Court to infer more than the mere possibility of misconduct on the part of BlueLinx. The allegations do not plausibly suggest that BlueLinx was part of a price-fixing conspiracy.

CONCLUSION

Viewing all of the allegations against BlueLinx together, it is the Court's opinion that the Plaintiffs have failed to nudge their claims against BlueLinx across the line from conceivable to plausible. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Accordingly, the Court finds Plaintiffs' allegations insufficient to state a claim against BlueLinx for violation of Section 1 of the Sherman Antitrust Act.

Having found that the Plaintiffs claims against BlueLinx in the Second Amended Complaint should be dismissed, the Court must consider whether the dismissal should be with, or without, prejudice. This matter is "entrusted to the sound discretion of the district court." *Lozano v. Ocwen Fed. Bank*, 489 F.3d 636, 644 (5th Cir. 2007). After consideration of the matter, Plaintiffs' claims against BlueLinx will be dismissed without prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [99] filed by Defendant BlueLinx Corporation is **GRANTED**. Plaintiffs' claims against BlueLinx Corporation are **DISMISSED WITHOUT PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(6).

**SO ORDERED AND ADJUDGED** this the 25th day of February, 2010.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE