IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BAILEY LUMBER & SUPPLY CO. and 84 LUMBER COMPANY | § § § | PLAINTIFFS |
| v. | § § | CAUSE NO. 1:08CV1394 LG-JMR |
| GEORGIA-PACIFIC CORP.; BLUELINX CORPORATION; WEYERHAEUSER CO. and LOUISIANA-PACIFIC CORP. | § § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN
PART AND DENYING IN PART MOTION TO DISMISS**

BEFORE THE COURT is the Motion [96] to Dismiss and Strike Plaintiffs' Second Amended Complaint filed by Defendants Georgia-Pacific Corporation, Weyerhaeuser Company, and Louisiana-Pacific Corporation (the "Manufacturing Defendants"). The Plaintiffs have responded and the Defendants have replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that the Motion should be granted in part and denied in part.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are purchasers of plywood and oriented strand board, referred to as "structural panels." They allege that the Defendants have engaged in a conspiracy to fix prices for these materials, in violation of Section 1 of the Sherman Act. The Plaintiffs brought this suit after opting-out of a class-action suit, filed in Pennsylvania, alleging an OSB price-fixing conspiracy. *In re OSB Antitrust Litig.*, No. 06-826 (E.D. Penn. 2006).

The First Amended Complaint

On August 10, 2009, the Court granted the Manufacturing Defendants' motion to dismiss Plaintiffs' First Amended Complaint. Ct. R. 86. The Court held that the plywood claims were

separate from the OSB claims, and therefore were not tolled during the pendency of the OSB class action suit in Pennsylvania. *Id*. at 5. Accordingly, only factual allegations of a plywood related injurious act occurring on or after November 12, 2004, were deemed relevant to the legal sufficiency analysis. *Id*. at 5-6. After reviewing the First Amended Complaint for factual allegations meeting this criteria, the Court found it insufficient to state a claim. *Id*. at 10. Additionally, the Court determined that Bailey was precluded as a matter of law from bringing indirect purchaser OSB claims that had been assigned to it by Lumbermen's Merchandising Corp. *Id*. at 11-12. The Manufacturing Defendants were granted leave to amend their complaint.

The Second Amended Complaint

The Second Amended Complaint describes a conspiracy begun in 2001 between Georgia-Pacific Corporation, Weyerhaeuser Company, Louisiana-Pacific Corporation, and others to increase the prices of structural panels. These three Defendants are all structural panel manufacturers, but only Weyerhaeuser has a distribution division. Louisiana-Pacific sold its distribution operation in 2002. In May 2004, Georgia-Pacific sold its distribution division, which became BlueLinx. Many of the Georgia-Pacific distribution division employees remained and became employees of BlueLinx.

The Plaintiffs allege two separate mechanisms employed by the Defendants to raise prices. The first is the manipulation of supply. There are numerous allegations of the manufacturing defendants closing or idling their structural panel plants in a coordinated manner, in order to reduce the supply of structural panels in the marketplace and thus raise prices. The second mechanism was enforcement of pricing discipline through price information sharing. Plaintiffs contend that the Manufacturing Defendants communicated with each other on a daily

basis, and shared sensitive price and market information. Specifically, the Manufacturing Defendants "shared information about (a) pending and future transactions, or transactions that were just minutes or hours old; (b) individual transactions, and (c) identities of specific sellers, plus price, region and order file terms." 2d Am. Compl. ¶ 127.

The Motion to Dismiss:

The Manufacturing Defendants request dismissal of all claims of a plywood price-fixing conspiracy on the basis of legal insufficiency. Further, or alternatively, they argue that all claims based on purchases prior to November 12, 2004, have not been tolled by the OSB class action suit and are therefore barred by the statute of limitations. In regard to the OSB conspiracy claims, the Manufacturing Defendants urge the Court to once again dismiss the OSB claims assigned to Bailey Lumber by Lumbermen's Merchandising Corp. Finally, in a separate motion, the Manufacturing Defendants ask that the Court strike the allegations recounting the actions of individual employees.

## DISCUSSION

In order to state a claim for a violation of Section 1 of the Sherman Act, a plaintiff must allege (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an "unreasonable" restraint of trade. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1158 (5th Cir. 1992) (citing *White & White v. Am. Hosp. Supply Corp.,* 723 F.2d 495, 504 (6th Cir.1983)). The plaintiff must allege that the defendants' conspiracy produced some anti-competitive effect in the relevant market. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994).

In *Twombly*, the U.S. Supreme Court held that "stating [a Section 1 claim] requires a

complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007). The allegations must "plausibly" suggest, not merely be consistent with, agreement. *Id*. at 557. Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). In short, when the well-pleaded complaint does not permit the court to infer more than the mere possibility of misconduct, the pleader is not entitled to relief. *Id*. at 1949.

The Supreme Court in *Twombly* did not impose a heightened pleading standard on plaintiffs asserting a claim under Section 1 of the Sherman Act. *Twombly*, 550 U.S. at 570. Rather, the Supreme Court created a new "plausibility standard," which requires that a complaint contain "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. This requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement ... [and] facts that are suggestive enough to render a § 1 conspiracy plausible." *Id.*

The Relevant Claims:

*A. Plywood v. OSB*

The Manufacturing Defendants have limited their Motion to Dismiss to the Plaintiffs' claims of anti-competitive behavior in regard to plywood, asserting that OSB and plywood are separate products with their own markets. Plaintiffs argue that OSB and plywood should be viewed together as the "structural panels" market rather than as separate markets. The Court notes that the allegations of the Second Amended Complaint are heavily weighted toward OSB.

Plywood claims are a minor part, and often are not differentiated from the OSB claims.

The Court earlier concluded that OSB and plywood, although related products, are nonetheless separate. They have separate, dedicated mills or plants, are used in similar but separate ways, and each Defendant has different market shares for OSB and plywood. The allegations in the Second Amended Complaint convince the Court that the plywood and OSB markets are indeed related, just as many building materials are related. Nevertheless, the markets are separable and should be considered separately.

*B. Statute of Limitations*

As noted above, the Plaintiffs in this case opted out of an OSB class action suit filed in a Pennsylvania U.S. District Court in 2006. In order to be tolled during the pendency of a class action, the claims brought by class members who opted out of the class action must be "embraced" within the class action suit. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393-94 (5th Cir. 2005). *See also Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) ("the tolling rule does not leave[] a plaintiff free to raise different or peripheral claims.").

In the Court's opinion, the claim that the Defendants conspired to fix prices of plywood is not embraced within claims brought in the OSB class action suit. It is clear that the conspiracy in that suit was alleged to involve only the supply and price of OSB. Although the class-action plaintiffs might have been able to include plywood in their conspiracy claims, they did not. Accordingly, the four year statute of limitations for the plywood claims has not been tolled by the class action suit. 15 U.S.C. § 15b. However, the Court rejects the Manufacturing Defendants' contention that also not embraced are the OSB price-fixing claims. Plaintiffs allege daily phone calls to share price information rather than reliance on the Random Lengths publication, as in the

class-action suit. This is not a new claim. It only asserts a slightly different method of communicating price information.

The Fifth Circuit has explained, in the context of conspiracy claims:

[C]ontinuing antitrust conduct resulting in a continued invasion of a plaintiff's rights may give rise to continually accruing rights of action. It remains clear nonetheless that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action.

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir.1975) (footnote omitted), *cert. denied*, 423 U.S. 1054 (1976). Thus, the Court must examine the allegations for a plywood-related injurious act occurring on or after November 12, 2004.

Plaintiffs have set out detailed factual allegations plausibly suggesting a § 1 price-fixing conspiracy for plywood during the limitations period. They have pled that the Manufacturing Defendants had an ongoing agreement to exchange sensitive, non-public price information and intended that this exchange would lead to price stabilization or increases. The Plaintiffs allege that the type and extent of the information exchange had no legitimate business purpose but was used by the competitors to set prices and to monitor each other's compliance with the conspiracy. The Plaintiffs allege that the price information exchange was part of the manufacturers' agreement to raise prices. The manufacturers restricted supply and then managed price increases through their daily communications.

The Supreme Court has recognized the danger of collusion posed by the exchange of pricing information. *Great Atl. & Pac. Tea Co., Inc. v. F.T.C.*, 440 U.S. 69, 80 (1979); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 457 (1978) ("the most likely consequence of any such agreement to exchange price information would be the stabilization of industry prices");

*United States v. Container Corp.,* 393 U.S. 333, 337 (1969) ("[t]he inferences are irresistible that the exchange of price information has had an anticompetitive effect in the industry, chilling the vigor of price competition"). Nevertheless, there is nothing inherently improper with competitors communicating with one another. *See In re Baby Food Antitrust Litig.,* 166 F.3d 112, 126 (3d Cir. 1999) (communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise). "Accordingly, information exchanges help to establish an antitrust violation only when either (1) the exchange indicates the existence of an express or tacit agreement to fix or stabilize prices, or (2) the exchange is made pursuant to an express or tacit agreement that is itself a violation of § 1 under a rule of reason analysis." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 906 F.2d 432, 447 n. 13 (9th Cir. 1990).

The Plaintiffs' allegations describe plywood supply restrictions taking place prior to the limitations period, but daily price-related communications continuing past November 2004. The price information exchange has two explanations. First, each company with a distribution operation had a legitimate business purpose to inquire into current prices quoted for open market sales and any other information that could affect the current price or availability of products from its sources in the future. The second explanation is that this exchange improperly furthered the Defendants' plywood price-fixing conspiracy. The allegation that a manufacturer that no longer had a distribution operation also made daily calls to other manufacturers indicates to the Court that the second explanation is plausible. Accordingly, the Plaintiffs have met the *Twombly* standard and sufficiently pled a claim for violation of Section 1 of the Sherman Act by maintaining a plywood price-fixing conspiracy.

*C. Bailey's Assigned Claims*

In its Memorandum Opinion and Order [86] granting the Defendants' motion to dismiss the First Amended Complaint, the Court determined that, as a matter of law, Bailey's partially assigned OSB claims may not be brought in this action. As was fully discussed in that Order, a class-action party with partially assigned claims, "unlike other class members, will not have the right to opt out." *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090-91 (3d Cir. 1980). There has been no change in the applicable law since the Court reviewed it, and therefore the ruling will stand. Bailey's partially assigned OSB claims will be, once again, dismissed as a matter of law. This does not affect Bailey's claims as a direct purchaser of OSB, or any claims regarding Bailey's purchases of plywood.

*D. The Motion to Strike*

The Manufacturing Defendants move to strike the portions of the Second Amended Complaint that identify specific employees by name and "lob scandalous allegations that these employees routinely engaged in unlawful behavior." Ct. R. 96 p. 3. Rule 12(f) allows a court to strike from any pleading, "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike matters from the pleadings are viewed with disfavor and are infrequently granted, both because striking portions of pleadings is a drastic remedy and because it often is sought by a movant simply as a dilatory tactic. *FDIC v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993). The Court possesses considerable discretion in ruling on a motion to strike. *Id*. Portions of a complaint generally will not be stricken unless "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Veazie v. S. Greyhound Lines*, 374 F. Supp. 811, 815 (E.D. La. 1974). Immateriality is established by showing the

challenged allegations "can have no possible bearing upon the subject matter of the litigation." *Sadler v. Benson Motors Corp.*, 1997 WL 266735, at *1 (E.D. La. May 15, 1997) (citation omitted). "Scandalous" in Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2 MOORE'S FEDERAL PRACTICE § 12.37[3] at 12-97; *see also Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C. 2004). The allegations identified by the Plaintiffs are not so scandalous or immaterial as to require that they be stricken. This Motion will be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss and to Strike [96] filed by Defendants Georgia-Pacific Corporation, Weyerhaeuser Company, and Louisiana-Pacific Corporation is **GRANTED** as to plywood purchases made before November 12, 2004 and Plaintiff Bailey's partially assigned OSB claims. These claims are dismissed with prejudice. The remainder of the Motion is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2010.

*Louis Guirola, Jr.*
Louis Guirola, Jr.
United States District Judge